

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00031-CV
_____

IN THE INTEREST OF J.F.G., III, A CHILD

On Appeal from the County Court at Law No. 1
Gregg County, Texas
Trial Court No. 2015-717-CCL1

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# OPINION

In a suit brought by the Texas Department of Family and Protective Services (the Department), S.J.'s parental rights to seventeen-month-old J.F.G.[1] were terminated after a jury trial.[2] The "Order of Termination" recited the causes for termination as found by the jury to comply with the grounds of termination in Texas Family Code Section 161.001(b)(1), subsections (D), (E), (M), (N), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (N), (O) (West Supp. 2015).[3]

---

[1]In this opinion, we refer to the child and his mother by initials in order to protect the child's identity. *See* TEX. R. APP. P. 9.8.

[2]Although the parental rights of J.F.G.'s father were likewise terminated, the father did not appeal the order of termination.

[3]The applicable reasons for termination as contained in the statute are based upon the parent having

      (D)     knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

      (E)     engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

    . . . .

      (M)     had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state;

      (N)     constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:

           (i)     the department has made reasonable efforts to return the child to the parent;

           (ii)     the parent has not regularly visited or maintained significant contact with the child; and

           (iii)     the parent has demonstrated an inability to provide the child with a safe environment;

2

In this accelerated appeal, S.J. argues that the evidence was legally and factually insufficient (1) to support the initial removal of the child from her care under a finding of aggravated circumstances, and (2) to support the jury's verdict of termination under grounds (D), (E), (N), and (O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). S.J. further complains that the evidence was factually insufficient to support the jury's finding that termination of her parental rights was in J.F.G.'s best interest. We affirm the trial court's order because we find that (1) entry of the final termination order rendered complaints regarding the temporary orders moot, (2) at least one predicate ground for termination was established, and (3) S.J. failed to preserve her factual sufficiency complaint regarding the best interest finding.

## I.      Factual and Procedural Background

In August 2014, while she was pregnant with J.F.G.,[4] S.J.'s parental rights to her two older children were terminated based on a finding that termination of those rights was in the children's best interests and that S.J. had engaged in acts or conduct pertaining to those children that satisfied the grounds for termination set out in Section 161.001(b)(1)(D), (E), and (O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O). Although the Department

---

(O)      failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child . . . .

TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (N), (O).

[4]J.F.G. was born in November 2014.

3

contacted S.J. two months after J.F.G. was born, it took no action to initiate conservatorship or termination proceedings with respect to J.F.G. Later, in April 2015, when five-month-old J.F.G. and S.J. were living with S.J.'s mother, two brothers, a sister, and her mother's boyfriend, the Department received information that J.F.G. had been admitted to Parkland Hospital with second degree burns to his left buttocks, left lower leg, and left ankle. S.J.'s explanation to the Department investigator was that J.F.G. had been sitting on an arm rest of the sofa when his fifteen-year-old aunt (S.J.'s sister, who was allegedly "intellectually delayed") sat down next to the child while holding a bowl of noodles. S.J. stated that J.F.G. grabbed the bowl from his aunt's hands and that the bowl's contents spilled on J.F.G.

At trial, S.J. explained that her teenaged sister took J.F.G. from S.J.'s bedroom on the morning of the injury and that she (S.J.) got up and went to the restroom. While she was in the restroom, S.J.'s testimony continued, she heard J.F.G. screaming and went into the living room where J.F.G. was with his aunt on the couch. J.F.G. was covered in water and hot noodles, and the footed onesie he was wearing was soaked. When S.J. removed the onesie and looked at the back of J.F.G.'s leg, it appeared to her that he had suffered a "brush burn."[5] S.J. applied burn cream to the affected area, but when J.F.G. continued to cry, she took him to the hospital in Longview.

---

[5]An abrasion on one's body caused by the friction of the skin moving rapidly across a surface. *Burn (brush b.)*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (30th ed. 2003).

J.F.G. was immediately transferred to Parkland Hospital in Dallas, where he was examined by Dr. Matthew Cox.[6] Cox testified that J.F.G. suffered from significant burns, burns which S.J. told him had been caused by the spilled hot water and noodles as described above. Cox described the burns, however, as having occurred by immersion. Cox described the pattern of burn as extending from the mid-lower leg down across the ankle joint to the foot, continuing on to relate that the burn pattern wrapped around the ankle in a circumferential manner, extended down to the foot, and included the back of the left thigh and most of the back of the left lower leg.

According to Cox, an immersion burn is a pattern of injury indicating contact with hot water (such as occurs when a foot is placed into some type of scalding hot water). Cox asserted that a burn caused by a spill exhibits a more irregular pattern. The burn pattern on J.F.G.'s left leg and foot was not, according to Cox, consistent with what was described as a spill. Cox indicated that he had seen many children who have been burned by soup or noodles and that they have a much more distinctive pattern of flow than the pattern seen on J.F.G. Cox testified that the type of burn injury seen on J.F.G. is highly suspicious of an inflicted injury. Moreover, the history that was described to Cox of J.F.G. reaching forward from a seated position would be unlikely, taking into account his age and his developmental abilities.

Although J.F.G. required approximately three weeks of hospitalization, his burns healed with medical care, and surgery was not required.[7] J.F.G. was released from the hospital into the

---

[6]Cox, who is certified with the American Board of Pediatrics as a pediatrician and a child-abuse pediatrician, is employed at the University of Texas Southwestern Medical School in the Department of Pediatrics, and works primarily at Children's Medical Center in Dallas. Cox also treats burn patients in connection with the REACH (Referral and Evaluation of At Risk Children) program at Parkland Hospital.

[7]After his release from the hospital, J.F.G.'s burns required bandaging for approximately four months.

Department's conservatorship[8] and was placed in a foster home, where he continued to reside at the time of trial.[9] After an adversary hearing,[10] the trial court issued a temporary order which reflected that there was a danger to J.F.G.'s physical health and safety and that his continued presence in the home was contrary to his welfare, that there was an urgent need for protection that required J.F.G.'s immediate removal from the home, and that although reasonable efforts were made to enable J.F.G. to return home, there was a substantial risk of continuing danger if that were done. S.J.'s parental rights to J.F.G. were terminated in accordance with Texas Family Code Section 161.001(b)(1)(D), (E), (M), (N), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M), (N), (O).

## II. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Indeed, parents have a fundamental right to make decisions concerning "the care, the custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). This Court is therefore required to "engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *Id.*

---

[8]The court had previously issued an order for protection of a child in an emergency, naming the Department as the temporary sole managing conservator.

[9]The foster parents expressed the desire to adopt J.F.G.

[10]At the hearing, the trial court found, among other things, that S.J.'s parental rights to her two older children were previously terminated and that J.F.G. suffered serious injury by either an act or omission of S.J. The trial court did not require the Department to offer a service plan to S.J.

at 500. "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20).

In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2015); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012). "Clear and convincing evidence" is that "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). This standard of proof necessarily affects our review of the evidence.

In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.). We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted. *J.P.B.*, 180 S.W.3d at 573.

Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, "the rights of natural parents are not absolute; protection of the child is paramount." *In re*

7

*A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994));

*see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "A child's emotional and physical interests must

not be sacrificed merely to preserve parental rights." *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex.

App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)).

## III.  Entry of the Final Termination Order Rendered Complaints Regarding Temporary Orders Moot

S.J. initially complains that the evidence to "support the initial removal of the child from

[her] care" is legally and factually insufficient,[11] including the finding of aggravated circumstances

pursuant to Section 262.2015 of the Texas Family Code.[12]  Here, the trial court did not require the

Department to offer a service plan to S.P., and the temporary orders included findings to support

that decision and the removal decision.  We find, however, that S.J.'s current complaints regarding

the evidentiary underpinnings of the temporary orders are now moot.  "[A] temporary order is

superseded by the entry of a final order of termination, rendering moot any complaint about the

temporary order." *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.)

(complaints regarding aggravated circumstances findings in temporary orders moot); *see also In re*

*Z.R.M.*, No. 04-15-00063-CV, 2015 WL 4116049, at *5 n.5 (Tex. App.—San Antonio July 8,

2015, no pet.) (mem. op.) (complaints about child's removal not proper in context of appeal from

---

[11]We interpret this point of error to encompass the evidence in support of the order for protection of a child in an emergency as well as the evidence in support of the temporary order following the adversary hearing.

[12]This section of the Family Code provides, in pertinent part, that "[t]he court may waive the requirement of a service plan and the requirement to make reasonable efforts to return the child to a parent . . . if the court finds that the parent has subjected the child to aggravated circumstances," TEX. FAM. CODE ANN. § 262.2015(a) (West Supp. 2015), to include a determination that "the parent's parental rights with regard to another child have been involuntarily terminated based on a finding that the parent's conduct violated Section 161.001(b)(1)(D) or (E) . . . ." TEX. FAM. CODE ANN. § 262.2015(b)(5) (West Supp. 2015).

final order terminating parental rights); *In re C.R.J.*, No. 06-13-00053-CV, 2014 WL 199209, at *2 (Tex. App.—Texarkana Jan. 17, 2014, no pet.) (mem. op.) (complaints regarding temporary hearings or temporary orders rendered moot when final termination order was entered); *In re D.W.*, Nos. 01-13-00880-CV, 01-13-00883-CV, 01-13-00884-CV, 2014 WL 1494290, at *3 (Tex. App.—Houston [1st Dist.] Apr. 11, 2014, no pets.) (mem. op.) (issuance of final decree rendered temporary orders moot and thus not subject to appellate review). We overrule this point of error.

## IV. Predicate Grounds

S.J. next complains that the evidence is legally and factually insufficient[13] to support the jury's verdict of termination under grounds (D), (E), (N), and (O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). In addition to grounds (D), (E), (N), and (O), the trial court also terminated S.J.'s parental rights on ground (M), that she "had her parent-child relationship terminated with respect to another child based on a finding that the mother's conduct was in violation of § 161.001(b)(1)(D) or (E), Texas Family Code."[14]

"Only one predicate finding under Section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.) (citing *A.V.*, 113 S.W.3d at 362); *In re N.R.*, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.). "If multiple predicate grounds are found by the trial court, we will affirm based on any one ground because

---

[13]As explained below, S.J. failed to preserve her factual sufficiency complaints.

[14]It is interesting to observe that there was no court order which the mother was shown to have violated. Ground (O) is based on the violation of such an order. This is irrelevant because only one ground must be proven to satisfy the need for termination.

only one is necessary for termination of parental rights." *K.W.*, 335 S.W.3d at 769 (quoting *In re D.S.*, 333 S.W.3d 379, 388 (Tex. App.—Amarillo 2011, no pet.)).  Here, S.J. does not challenge the trial court's finding with respect to Section 161.001(1)(M).  Because this ground can support the order of termination, it is unnecessary to review legal and factual sufficiency arguments as to the other grounds.[15]  *Id*. at 769–70; *In re D.P.R.V.*, No. 04-09-00644-CV, 2010 WL 2102989, at *1 (Tex. App.—San Antonio May 26, 2010, no pet.) (mem. op.) (citing *A.V.*, 113 S.W.3d at 362); *D.S.*, 333 S.W.3d at 388–89 (appellate court bound by unchallenged findings supporting termination); *In re S.N.*, 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.) (parents challenged only two of four predicate grounds for termination).  We overrule this point of error.

## V.     S.J. Failed to Preserve Factual Sufficiency Complaint Regarding the Best-Interest Finding

S.J. also challenges the factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in J.F.G's best interest under Section 161.001(b)(2).  *See* TEX. FAM. CODE ANN. § 161.001(b)(2).  "The Texas Rules of Civil Procedure specify that the filing of a motion for new trial is a prerequisite to present[ing] '[a] complaint of factual sufficiency of the evidence to support a jury finding.'"  *In re O.M.H.*, No. 06-12-00013-CV, 2012 WL 2783502, at *2 (Tex. App.—Texarkana July 10, 2012, no pet.) (mem. op.) (second alteration in original) (quoting TEX. R. CIV. P. 324(b)(2)) (citing *Cecil v. Smith*, 804 S.W.2d 509, 512 (Tex. 1991)).  Because S.J. did not file a motion for new trial raising a factual sufficiency

---

[15]At trial, the order terminating S.J.'s parental rights to her two older children based on the trial court's findings by clear and convincing evidence that S.J.'s conduct was in violation of subsections (D) and (E) and that the termination of S.J.'s parental rights was in the children's best interests was introduced without objection.

challenge to the jury's verdict, "[f]actual sufficiency is not preserved for appeal." *Id.* (footnote omitted) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)); *see In re J.V.*, No. 02-15-00036-CV, 2015 WL 4148500, at *1–2 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.); *In re E.K.*, No. 13-14-00720-CV, 2015 WL 2353292, at *7–8 (Tex. App.—Corpus Christi May 14, 2015, no pet.) (mem. op.).

## VI.    Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:      July 27, 2016
Date Decided:       August 5, 2016

11